# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JAMES BUSSEY, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHCOMPARE INSURANCE SERVICES, INC. and DIGITAL THRIVE, LLC<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br><br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Bussey ("Plaintiff") (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer

Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by HealthCompare Insurance Services, Inc. ("HealthCompare") to market its services through the use of pre-recorded telemarketing calls in violation of the TCPA.

3. HealthCompare commissioned telemarketing vendors, including Digital Thrive, LLC ("Digital Thrive"), to place pre-recorded telemarketing calls to the Plaintiff and other putative class members without their prior express written consent.

4. Mr. Bussey also alleges that HealthCompare made multiple telemarketing calls to residents that have placed themselves on the National Do Not Call Registry, and that by doing so, the Defendants have separately violated the TCPA.

5. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of

action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7. Plaintiff James Bussey is a resident of Georgia and this District.

8. Defendant HealthCompare, Inc. is a corporation.

9. Defendant Digital Thrive, LLC is a limited liability company.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

11. This Court has jurisdiction over HealthCompare because it specifically commissioned telemarketing calls to be sent into Georgia and does business itself in Georgia.

12. This Court has jurisdiction over Digital Thrive because it sent the calls into this District.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the calls were made to and received in this District.

## BACKGROUND

<u>Calls Made Using a Pre-Recorded Message</u>

14. The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

16. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an

artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

18. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

19. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

20. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

21. Defendants HealthCompare and Digital Thrive are "persons" as the term is defined by 47 U.S.C. § 153(39).

22. At no point has the Plaintiff sought out or solicited information regarding Defendants' services prior to receiving the pre-recorded calls at issue.

Call to Plaintiff

23. Mr. Bussey's cellular telephone number is (404) 993-XXXX.

24. That cellular telephone number is a residential telephone line used by Mr. Bussey for personal calls.

25. That telephone number has been on the National Do Not Call Registry since August of 2022.

26. Despite that, Mr. Bussey received a pre-recorded telemarketing call from Digital Thrive on behalf of HealthCompare more than ten times, including on November 8, 9, 10, 11, 12, 14, 18, 19, 21, 22 and 25, 2022.

27. The calls played a pre-recorded message.

28. The pre-recorded message did not identify the caller.

29. The pre-recorded message inquired about the call recipient's insurance needs.

30. The call was clearly pre-recorded because (a) there was a significant pause after the Plaintiff picked up the phone before the robot started speaking (b) the recording would keep playing when the call recipient began talking (c) the robot had a generic monotone voice.

31. Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified some of numbers that called as robocallers. *See* https://nomorobo.com/lookup/844-651-1620; https://nomorobo.com/lookup/844-665-1018.

32. Finally, after receiving more than 10 calls, the Plaintiff responded to the pre-recorded message on November 25, 2022.

33. On that call, the Plaintiff then spoke to Gary James, an employee of HealthCompare.

34. Mr. James offered HealthCompare insurance services.

35. To do so, Mr. James asked the Plaintiff if he had his Medicare card.

36. Mr. James then asked the Plaintiff if he had Medicare Part A and B.

37. To curate an offer specific to the Plaintiff, Mr. James asked the Plaintiff his age and if he had Medicare or not and was interested in insurance services that they promoted.

38. Prior to the filing of the complaint, counsel for the Plaintiff contacted HealthCompare's parent company regarding the conduct.

39. HealthCompare did not deny that calls occurred, and instead identified that Digital Thrive was responsible for contacting the Plaintiff.

40. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## **HEALTHCOMPARE'S VICARIOUS LIABILITY**

41. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

42. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

43. The FCC has instructed that sellers such as HealthCompare may not avoid liability by outsourcing telemarketing to third parties, such as Digital Thrive:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party

> telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

44. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

45. HealthCompare is liable for telemarketing calls placed by Digital Thrive to generate customers for HealthCompare.

46. HealthCompare authorized Digital Thrive to send telemarketing calls and transfer the call recipient directly to HealthCompare.

47. HealthCompare controls the day-to-day activities of Digital Thrive's telemarketing for HealthCompare.

48. HealthCompare restricts the geographic footprint into which its telemarketing vendors, including Digital Thrive, can cause calls to be made.

49. HealthCompare provided the specific criteria for the leads it would accept and required its vendors, including Digital Thrive, to adhere to those criteria.

50. HealthCompare knew or reasonably should have known that Digital Thrive was violating the TCPA on HealthCompare's behalf but HealthCompare failed to take effective steps within its power to cause them to stop.

51. Digital Thrive has previously been implicated in TCPA lawsuits, including by violating the TCPA's prohibition on making calls using a prerecorded voice to cellular phones without the recipient's prior express consent, and has been involved in more cases as a third-party vendor responsible for calls that violated the TCPA.

52. A reasonable seller whose telemarketers are the targets of repeated telemarketing complaints would and should investigate to ensure that its telemarketing complies with the TCPA.

53. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## **CLASS ACTION ALLEGATIONS**

54. Plaintiff brings this action on behalf of himself and the following Class (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

55. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendant) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff (5) from four years prior to the filing of the Complaint through trial.
>
> **National Do Not Call Registry Class**: All persons within the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior to the filing of the Complaint through trial.

56. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes as he has no interests that conflict with any of the class members.

57. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. Plaintiff and all members of the Classes have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

59. This Class Action Complaint seeks injunctive relief and money damages.

60. The Classes are defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

61. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes members number, at minimum, in the hundreds in each class.

62. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

63. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

64. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

65. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

> (a) Whether the Defendants used pre-recorded message to send telemarketing calls;
>
> (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;
>
> (c) whether the Defendants accessed and removed numbers from its calling list that were on the National Do Not Call registry;
>
> (d) whether Defendants' conduct constitutes a violation of the TCPA; and
>
> (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

66. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes.

67. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

68. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
47 U.S.C. 227(b) on behalf of the Robocall Class**

69. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

70. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls,

except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

71. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

73. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number in the future.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. 227(c) on behalf of the National Do Not Call Registry Class**

74. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

75. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

76. The Defendants' violations were negligent, willful, or knowing.

77. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

78. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number in the future;

B. Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future;

C. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

E. Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: May 5, 2023

        PLAINTIFF, individually and
        on behalf of others similarly situated,

        By:

        */s/ Steven H. Koval*
        Steven H. Koval
        Georgia Bar No. 428905
        3575 Piedmont Road
        Building 15, Suite 120
        Atlanta, GA  30305
        Telephone:  (404) 513-6651
        Facsimile: (404) 549-4654
        shkoval@aol.com

        Anthony I. Paronich (*subject to pro hac vice*)
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        [o] (617) 485-0018
        [f] (508) 318-8100
        anthony@paronichlaw.com

## **CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D**

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with 14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

        */s/ Steven H. Koval*
        Steven H. Koval